UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JOHN DAVID HUNT,

                      Plaintiff,

   v.

AAA NEVADA INSURANCE COMPANY,
d/b/a CSAA GENERAL INSURANCE
COMPANY,

                      Defendant.

Case No. 3:18-cv-00062-LRH-WGC

ORDER

Plaintiff John David Hunt has filed a motion for summary judgment on his claims against defendant AAA Nevada Insurance Company ("CSAA"). (ECF No. 15). CSAA responded with its own motion for summary judgment. (ECF No. 16). For the reasons stated below, the Court denies Hunt's motion for summary judgment and grants CSAA's motion for summary judgment.

**I. Factual Background and Procedural History**

Prior to filing their cross motions for summary judgment, the parties stipulated to the material facts in this UIM insurance coverage case. (ECF No. 14). On March 3, 2013, Hunt was driving his vehicle on Veterans Parkway in Reno, Nevada, when he encountered non-party Thomas Harper driving well-below the speed limit in the left lane on a two-lane road. (ECF No. 14 at 2). Hunt began to pass Harper's vehicle in the right lane, but before he could complete his pass, Harper "aggressively swerved to the right," which was an "apparent attempt to run Hunt off the road." (*Id.*) Hunt managed to avoid Harper's vehicle and continued on until he reached an intersection with a stop sign. (*Id.*) Harper had followed Hunt to the intersection, and upon arriving, both men

1

pulled over, exited their vehicles, and approached one another on the side of the road. (*Id*.) Harper, "angered and upset," caught Hunt by surprise with a punch to the face. (*Id*. at 3). Hunt grabbed Harper as he fell to the ground, but as he did so, he fractured his ankle. (*Id*.) Harper initially fled the scene after striking Hunt, but he returned after realizing that he had forgotten his wireless key fob. (*Id*.) At the time of the fight, Harper and Hunt were standing near Hunt's vehicle. (*Id*. at 2). Hunt was transported to the hospital and treated there for his injuries, which included an "open reduction internal fixation of his ankle fracture." (*Id*. at 3). Hunt ultimately contracted an infection in his ankle (MRSA), which required several more surgeries and procedures to successfully treat. (*Id*.) At the time of his fight with Harper, Hunt had an auto insurance policy through CSAA. (*Id*. at 1–2).

Initially, Hunt filed a lawsuit against Harper in this Court (3:17-cv-00165-RCJ-WGC), seeking to recover damages for the injuries he sustained in the fistfight. Harper's insurance carrier, Allstate, also filed an action in this Court (3:16-cv-00579-MMD-WGC) seeking declaratory relief from having to defend or indemnify Harper. Both of those cases were resolved via a stipulated dismissal in March 2018. To date, Hunt has incurred at least $676,000 in medical expenses arising out of his injuries and subsequent infection. (ECF No. 14 at 3). He filed a claim with CSAA, requesting the $250,000 "each person" UIM limit under his insurance policy, but following an investigation, CSAA denied his claim because the injuries he sustained did not fall under the purview of his auto insurance policy. (*Id*. at 3–4). Specifically, Hunt's policy stated that he would be entitled to receive compensation from CSAA if he suffered a bodily injury: (1) "caused by an accident" and (2) "arising out of the ownership, maintenance, or use" of an underinsured motor vehicle. (ECF No. 14 at 4). CSAA denied coverage because it claimed that Hunt's injuries did not arise out of the use of an automobile. (ECF Nos. 14-5, 14-6, 14-7). Following the denial of coverage, Hunt filed this lawsuit against CSAA in February 2018, alleging four causes of action in his amended complaint: (1) breach of contract; (2) bad faith; (3) breach of the implied covenant of good faith and fair dealing; and (4) tortious interference of a contract. (ECF No. 5). Before the close of discovery, the parties filed cross-motions for summary judgment on August 7, 2018. (ECF Nos. 15, 16).

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the non-moving party. *See id*. at 252.

Where, as here, the parties filed cross-motions for summary judgment on the same claims, the court must consider each party's motion separately and on its own merits, "giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of*

*Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006). Further, in evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). *See also Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001) ("[T]he court must consider the appropriate evidentiary material identified and submitted in support of both motions, and opposition to both motions, before ruling on each of them.").

### III. Discussion

Because the parties have stipulated to a set of facts, there is no question of material fact in this case, making it apt for summary judgment. The success of both parties' motions turns on the definition of two phrases contained within Hunt's insurance policy – "caused by accident" and "arise out of the ownership, maintenance, or use" of a motor vehicle. If Hunt's incident with Harper was an "accident" and arose out of the "use" of his motor vehicle, then CSAA is obligated to compensate Hunt based on the terms of his insurance policy and because it did not, it will have breached the insurance contract. If Hunt's incident does not fall under the purview of both provisions, then CSAA has abided by the terms of the contract and is not obligated to compensate Hunt. Furthermore, the parties have stipulated that if CSAA prevails on its motion for summary judgment, it dispenses with all of Hunt's claims, not just the breach of contract claim that he seeks summary judgment on. (ECF No. 14 at 4). On the other hand, if Hunt prevails on his motion for partial summary judgment for his breach of contract claim, then he will be allowed to further pursue his second, third, and fourth claims against CSAA. (*Id.*) This narrows the Court's analysis to that of insurance contract interpretation, which presents only a question of law. *State Farm Mut. Auto Ins. Co. v. Cramer*, 857 P.3d 751, 753 (Nev. 1993).

The starting point for the interpretation of any contract, including insurance policies, is with its plain language. *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 53 P.3d 904, 906 (Nev. 2002). Under Nevada law, insurance policies "should be interpreted broadly, affording the greatest possible coverage to the insured." *Farmers Ins. Group v. Stonik By and Through Stonik*, 867 P.2d 389, 391 (Nev. 1994) (citing *Harvey's Wagon Wheel v. MacSween*, 606 P.2d 1095, 1098 (Nev. 1980)). Any ambiguity in an insurance contract must be interpreted "against the drafting party and

in favor of the insured." *Id.* (citing *Neumann v. Standard Fire Ins.*, 699 P.2d 101, 104 (1985)). Despite the presumption of ambiguity in favor of the insured, when a contract contains clear and unambiguous provisions, those provisions will be construed according to their plain and ordinary meaning. *Dickenson v. Nevada*, 877 P.2d 1059, 1061 (Nev. 1994); *Siggelkow v. The Phoenix Ins.*, Co., 846 P.2d 303, 304 (Nev. 1993). With these principles in mind, the Court turns to whether the injuries Hunt suffered were the result of an "accident" as that term is defined in his insurance policy.

### A. "Accident"

Hunt's CSAA insurance policy defines an "accident" as a "sudden, unexpected, and unintentional occurrence. An intentional act, event, or happening is not an 'accident.'" (ECF No. 14 at 4). Hunt argues that the definition of "accident" is written from his perspective rather than that of an omniscient observer, and because he was not expecting Harper to punch him, the fight was sudden and unexpected. (ECF No. 15 at 8). Moreover, Harper's battery, while an intentional tort, was not an "intentional act" for policy purposes because Hunt did not intend to be injured or battered during his confrontation with Harper. (*Id*. at 9–10). Hunt also asserts that CSAA "conceded" that the fight with Harper was an "accident" in a January 23, 2018 email: "[a]t no point in time have we [CSAA] denied that the events that took place would fall under the definition of an 'accident' in the policy." (*Id*. at 12). In response, CSAA asserts that the term is unambiguous and should be afforded its plain meaning, which would exclude all intentional acts, regardless of who the actor is, from being deemed "accidents." (ECF No. 23 at 7).

Although creative, the Court rejects Hunt's interpretation of the term "accident." The definition of "accident" within Hunt's insurance policy is clear and unambiguous; intentional acts are specifically excluded from coverage regardless of whether the policy holder or a third party is the actor. (ECF No. 14 at 4). Presumably, if the parties intended for intentional acts by third parties, such as the intentional destruction of a vehicle, to be included in policy coverage under the term "accident," they would have specified as such. But they did not. The Court is not permitted to rewrite insurance contracts to provide coverage for the insured where none exists. *See State Farm Mut. Auto. Ins. Co. v. Cramer*, 857 P.2d 751, 755 (Nev. 1993) ("We will not rewrite unambiguous

insurance policy provisions or attempt to increase the parties' legal obligations where the parties intentionally limited such obligation."). It is uncontested that Harper committed an intentional battery against Hunt when the two men confronted one another following Harper's alleged attempt to run Hunt off the road. This is not a situation where Harper intended to scare or frighten Hunt, but accidentally harmed him instead. *See Allstate Ins. Co. v. Sanders*, 495 F. Supp.2d 1104, 1108 (D. Nev. 2007) (finding coverage under an "accident" provision where intoxicated insured threw a metal object at plaintiff intending to scare him, not injure him). The evidence before the Court indicates that Harper fully intended to harm Hunt, and therefore, Hunt's injuries cannot be deemed to have resulted from an "accident."

Case law from the Supreme Court of Nevada supports this ruling. In *Fire Ins. Exchange v. Cornell*, the court held that an intentional act committed by the insureds' son did not qualify as an "occurrence" under their homeowner's policy, and thus the insurance company had no obligation to defend them. 90 P.3d 978, 980. There, the term "occurrence" was defined as an "accident resulting in bodily injury." *Id*. Although the term "accident" itself was not defined in the policy, the court applied the "common definition" of the word – "a happening that is not expected, foreseen, or intended." *Id*. (citing *Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 276 (Nev. 2004)). The court held that the insureds' son's molestation of a minor in the insureds' house was not an "accident" because it was an intentional act even though the insureds were unaware of their son's conduct and did not expect or intend for it to happen. *Id*. Notably, the Supreme Court's definition of "accident" is nearly identical to the definition of the term in Hunt's insurance policy, and the Court sees little reason to deviate from well-established Nevada insurance law.

There is also no evidence that CSAA conceded that the fistfight was an "accident." Hunt misconstrues CSAA's January 23, 2018 email as a concession from CSAA that the incident was an "accident." But this is not what a plain reading of the email reveals. Instead, the email merely states that CSAA had not, at that point, denied that Hunt's injuries were not caused by an "accident." Removing the double negatives, CSAA merely stated that at that point in time, it had not reached a decision regarding Hunt's coverage. CSAA's email is essentially a non-statement and far from the definitive concession Hunt portrays it as.

Because the definition of "accident" within Hunt's insurance policy specifically excludes intentional acts from coverage, Harper's intentional battery of Hunt is not covered under the policy. Therefore, CSAA cannot be liable for breach of contract because it correctly refused to accept Hunt's insurance claim.

### B. "Use" of a Motor Vehicle

Even if Hunt could demonstrate that his fight with Harper was an "accident," he would still need to show that his injuries arose out of the "ownership, maintenance, or use" of his motor vehicle. (ECF No. 16 at 6). Hunt argues that road rage was the cause of his injuries, and because road rage necessarily involves the use of a vehicle, his injuries fall under the terms of his insurance policy. (ECF No. 22 at 6). On the other hand, CSAA argues that road rage incidents where the parties have exited their vehicles do not arise out of the "ownership, maintenance, or use" of their motor vehicles, and thus Hunt's injuries are excluded from coverage. (ECF No. 16 at 15).

The Court agrees with CSAA. While Hunt is correct in asserting that the impetus for the fight occurred while he and Harper were driving, he sustained his injuries because of a physical assault on the side of the road, not in an auto collision. The insurance policy covers injuries that occur while the policy holder is actively using his motor vehicle; the fact that the policy holder traveled to an area by way of a motor vehicle does not automatically bring the injuries he sustained at that area into the purview of his insurance policy. For instance, someone who drives to a bar with his insured motor vehicle and suffers injuries in an ensuing bar fight cannot claim that his injuries resulted from the use of his vehicle simply because of his method of travel. Similarly, someone who develops the motivation to engage in particular conduct while driving also cannot claim that subsequent injuries arose out of the "use" of his motor vehicle. A ruling to the contrary would defeat the plain meaning of the word "use," which the Ninth Circuit has previously stated to mean "make use of or to enjoy." *Yandle v. Hardware Mut. Ins. Co.*, 314 F.2d 435, 437 (9th Cir. 1963) (repairing a trailer axle did not constitute "use" or enjoyment of a motor vehicle). Hunt was certainly not making use of or enjoying his motor vehicle when he was standing on the side of the road and being attacked by Harper.

///

Hunt's case is similar to a Ninth Circuit opinion, *State Farm Mut. Auto. Ins. Co. v. Fernandez*, 767 F.2d 1299 (9th Cir. 1985). There, the policy holder (Fernandez) was involved in a road rage incident with an unrelated third party (White). *Id*. at 1300. White shouted at Fernandez when the two passed each other on the road, which lead to Fernandez turning around and pursuing White. *Id*. In the subsequent confrontation outside of their vehicles, White stabbed Fernandez. *Id*. Fernandez filed a claim for UM benefits through his auto insurance policy, but his carrier denied the claim because his injuries did not arise out of the "use" of his motor vehicle. *Id*. at 1302. The District Court for the District of Hawai'i granted the insurance carrier's motion for summary judgment on the coverage issue, and the Ninth Circuit subsequently affirmed. In so holding, the Ninth Circuit noted that "an intervening intentional act breaks the causal connection between the use of an uninsured vehicle and an injury." *Id*. This is precisely the case here. Between Hunt driving his vehicle and breaking his ankle, he was involved in a curbside attack by Harper in which he was punched in the face. The curbside assault, much like the stabbing in *Fernandez*, is an intervening intentional act that breaks the causal connection between Hunt's use of his vehicle and his injury. *See also Wincor Nixdorf Inc. v. Discover Property & Cas. Ins. Co.*, 612 Fed. App'x. 900, 901–902 (9th Cir. 2015) (insured did not "use" his vehicle when he exited it and attacked a pedestrian while stopped at a crosswalk); *Allstate Ins. Co. v. Bruttig*, 2006 WL 3248393, at *7–8 (D. Nev. Nov. 3, 2006) (insured was not "using" his motor vehicle when, following an accident, he exited his vehicle and assaulted the other party to the accident).

Hunt asks the Court to effectively ignore the Ninth Circuit's holding in *Fernandez* because the "case is dated and has earned its retirement." (ECF No. 15 at 6). Hunt directs the Court to a published case from the District of Arizona, *Moore v. Farm Bureau Property & Cas. Ins. Co.*, which "expressly rejected *Fernandez*." 993 F. Supp.2d 1039 (D. Ariz. 2014). *Moore*, however, is not only not binding on the Court, but it dealt solely with a secondary issue in *Fernandez* concerning an arbitration clause within the insurance policy rather than the insurance coverage the Court faces today. *Id*. at 1041–42. *Moore* is inapplicable to the case at bar, and Hunt has given no persuasive reason as to why the Court should ignore the Ninth Circuit's ruling in *Fernandez*.

///

In sum, Hunt has failed to demonstrate that the incident with Harper amounted to an "accident" (as the term is defined in his insurance policy) or that his injuries arose out of the "use" of his vehicle. Instead, a plain reading of both terms indicates that his fight with Harper is not covered under either of them. The Court will accordingly deny his motion for summary judgment and grant CSAA's motion for summary judgment, which will dispense with all Hunt's claims pursuant to the parties' stipulation. (ECF No. 14 at 4).

### IV. Conclusion

IT IS THEREFORE ORDERED that Hunt's motion for summary judgment (ECF No. 15) is **DENIED**.

IT IS FURTHER ORDERED that CSAA's motion for summary judgment (ECF No. 16) is **GRANTED**. The Clerk of Court is directed to enter judgment for defendant AAA Nevada Insurance Company and against plaintiff John David Hunt.

IT IS SO ORDERED.

DATED this 25th day of February, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE